Case number 22-3369, Vicki Tranbarger v. Lincoln Life Annuity Co of NY. Oral argument not to exceed 15 minutes per side. Tony C. Mary for the appellant. You may proceed. Thank you. May it please the court, we've asked to reserve three minutes. My name is Tony Mary. With me at the council table is my colleague Benjamin Mary, representing Vicki Tranbarger this morning. We asked for oral argument in this case in our brief to discuss the standard of review of this court's review of the district court, so I'll begin there. And with respect to the standard of review, there's no logic to the notion that this court should defer to the district court's decision when this court and the district court are reviewing the same cold record. As we noticed in our opening brief, there's no considered decision from this court that reflects that the standard of review in this court should be deferential to the district court. I'm sorry. What about the Moore case? There are several opinions from this court that mention the standard of review in passing, but there isn't any case. Doesn't Moore apply? I don't think Moore applies any more than Javeri does or than the cases way back, Perry v. Simplicity Engineering. I mean, the court's. I don't understand your point then. You said there was no case that applied deferential review or whatever. Well, no, no. There's no case from this court that has carefully considered what the standard of review should be in an ERISA case. I went through in our brief and pointed out Moore said. I guess I'm not understanding that. I mean, in Wilkins, you're saying that Wilkins didn't discuss the issue in depth or the Rowan case or Perry. I mean, there's a million cases out there. You're saying they didn't talk about the issue like the Fourth Circuit just did? Is it depth of treatment? Correct. The early cases, starting with Perry, the standard of review was always we can read the record. There's no point in deferring to the district court. There were the Moore case and I think there was, I've cited all the cases in our brief where they mention almost in a drive-by way, we defer to the district court. We review questions of law at ENOVA. We've referred the district court on the findings of fact in an ERISA case. But if you trace the lineage of the citations, they all come back to a district court case where the court actually heard evidence. There is no case. Why doesn't, I suppose, I don't understand why you're giving away what you're giving away. I mean, in the Wilkins decision, we said we reviewed ENOVA factual determinations and legal determinations in the part of the opinion that was joined by all three judges. Why doesn't that resolve the issue in your favor? Well, I think it does, Your Honor. I was responding to the more recent cases that have come down from the court. There have been two or three that have said, we go one way in one case and one gun in another and we don't need to resolve it. I think Wilkins clearly says, and the majority of the cases, clearly say it's the ENOVA review. And it makes no sense to do otherwise. Why is that? With respect to factual issues at least, we always defer to the district court. Only, Your Honor, where the district court has heard testimony. I don't know of a situation where this court defers to the district court where the district court is reviewing a record. Well, the Fourth Circuit, I mean, I guess the Fourth Circuit said it's kind of an institutional question, right? The district courts are the ones that usually do that. They have the experience doing it. Even if it's a cold record, they're in a better position to make those determinations. And once they make the factual call, why wouldn't we defer to that? I mean, it seems fairly persuasive to me. I mean, I don't know. If we were in a blank slate, I'm not sure they're wrong. And in fact, most of the circuits do it that way. Isn't that right? No, most of the circuits do not. The new Fourth Circuit case, the Techman case, that was more about how the district court should adjudicate claims than it was about how the court of appeals should review it. And the issue was, do we – That was an issue in the case. I mean, they specifically – that was the institutional argument they were making, that district courts are in a better position than courts of appeals to make fact findings, even with the same stack of papers on my desk. And you could agree with that, you could not agree with it. But they were clearly addressing this issue. Well, I think, yeah, I grant you that. But I think they were addressing it in the context of whether it's Rule 52 or Rule 56. And in Wilkins, we threw out both of those rules. And the problem with – and I've alluded to it in our brief. The problem is when Congress passed ERISA, it never said that these would be appeals. We've treated them as appeals since 1990, the court has. And all the courts have. It started in the Seventh Circuit and it's spread all the way through. But the statute says that a plaintiff's got a right to bring a civil action. We should be able to do discovery. We should have witnesses. We should be able to cross-examine their experts. That's an interesting argument. And we're – there's nothing we can do about that. Well, I understand that. I understand that. I mean, arguably Firestone's inconsistent with that view too. You'd have to go to the court to talk to them about the way Rule 81 would work and the way that Rule 2 or 3 and what a civil action is and all that. But there's nothing we can do about that, right? Well, no, I understand that. The Firestone – principal holding in Firestone was that – was rejecting the argument that courts should follow the National Labor Relations Act review standards. And Firestone basically said, no, we're going to review stuff. Are you arguing the standard of review is dispositive here? Are you saying you lose – Oh, no, no. I don't think the standard of review is dispositive at all here. I think that – So we're spending a lot of time without talking about the merits. Judge Marbley looked at this case de novo and ruled against your client. Yeah. What was the – what's the error under any standard of review? What's the error that – I think we identified four errors that he made. First of all, because I think the evidence all points in one direction. The judge, first of all, didn't – Judge Marbley didn't refuse to consider any evidence that was outside the elimination period. Complete. He ruled all that out. And we have opinions from three physicians outside the elimination period that say very clearly that – Why didn't you get – why didn't you have that information during the – I mean, there is a reason for the elimination period and a reason why Judge Marbley ruled the way he did. Why don't you have those same opinions during the elimination period? Well, because Vicki Tranbarger represented herself. And she submitted the information – she stopped work in July of 2016. She went to the Mayo Clinic for four days in July of 2016. She submitted all the Mayo Clinic evidence. We also have the opinion from the administrative law judge who found, for Social Security purposes – I know. I just – Why wasn't it in there? Because she didn't hire a lawyer. Well, okay, that's a little funny to say because when she just went in at face value to the doctors, none of them said she's totally disabled. When she had a lawyer and arguably would have had a point to make to the doctors, then the doctors start saying, oh, you're right, you are disabled and you can't recover. So it's a little – I mean, when she was doing it at face value, none of those doctors said – I mean, these doctors, they've seen these issues. They would understand the issues. None of them said this is so serious that I don't think you should work. It looks like you're qualified to be permanently disabled. But, Your Honor, with respect, the Okuno case that we cited says that's not even the doctor's job. That's the court's job. The court's job is to look at the evidence and decide whether or not when – I'm looking at the evidence. Your point is her evidence got better when she got a lawyer. But I don't – I disagree with that. She had a lawyer briefly, the Social Security lawyer, after the first appeal, submitted the Social Security ALJ decision. After that, on the second appeal, she went and got the other doctor's opinions. But we're also dealing with a woman who's got a pretty serious illness. And her testimony was that she was flat on her back for a fair amount of time. There's a lot of evidence that supports that she's disabled. Her employer said she was disabled. There's an email in there. We can certainly fault that she doesn't have everything that a lawyer would put in. But part of the principle of an ERISA claim, as I understood it, is we're supposed to make it easier for the claimants. We're not supposed to require that they have lawyers. And the Fourth Circuit case that I cited kind of puts a little bit of a burden on the fiduciary to say, you know, if you've got a colorable claim, maybe we ought to help you out with that. That's another really weird thing about ERISA, because we engage in the fiction that an insurance company is acting as a fiduciary. And they rarely do. But the point is, this isn't a case where, like a car accident case, where two people saw the light red and one person saw the light green. This is a case where everybody saw the light the same way. It's just that Lincoln said, yeah, we don't believe you. I mean, what does a preponderance of the evidence mean when there is no evidence countervailing? The only evidence that Lincoln ever mounted that said you're not disabled was that sports medicine guy that came in at the back end and reviewed the file. Otherwise, there is not a single doctor there that says she doesn't have this disease. There's not a single doctor there. But you need them to say affirmative. You don't need them to say the negative. Don't you need them to say the affirmative? I'm sorry, I didn't understand you. You're saying the doctors didn't say she didn't have something. But isn't the obligation to have the doctors affirmatively say, because she has this affliction, she can no longer work or she's not eligible to do certain kinds of things? No, I don't think there's a case that says that. Isn't that what the doctor said? Isn't that more of what your evidence said after, later on? A doctor could say that. A doctor could say that. But the evidence, let's just stick with the evidence at the time she was disabled. Two visits to the Mayo Clinic, one over four days where they documented you've had this incredible fatigue and all these other things. We've got the ALJ decision that's retro to the date that she left. We've got her employer, Anna Malchado, who said, we kept trying to help her out, we kept trying to help her out, she couldn't do the work. The ALJ looked at the post-elimination period evidence. Well, sure he did, but he also found, and he was required to find. There's some cases where your illness could get worse later on. Oh, sure. But the question is, what's the evidence show that she was like on July 26th? I agree with you. I agree with you. But to make that point, you're relying on a lot of evidence that was later on. And it's certainly possible in these cases that the illness can get worse. Oh, I think, sure. She could have gotten better, for that matter. But the evidence, well, the ALJ, number one, has to find that she was disabled as of the date she claimed. So that's a finding of fact. But secondly, once again, we've got a pro se person who's submitting evidence. She was told by Lincoln she didn't have to submit any records before the date she's claimed to be disabled. So we don't have any of the prior records. We don't know what those would have said. Had she been represented by a competent lawyer, she would have gotten all those records in. I apologize, I'm over my time. Okay, counsel, you'll have your rebuttal time. Thank you. Good morning, Your Honor. It's Bernd Decker for Lincoln. On the standard of review, I tend to agree with my friend that you're not bound. To the extent you are bound, you would be bound by the earlier cases. More is an earlier case than Wilkins. I agree with my friend that you've never actually discussed the issue. And it's an important issue that I think needs to be resolved. The Simpson case is also an earlier case than Wilkins. But the Simpson case is a trial. The Simpson case was an actual court proceeding, wasn't it? It wasn't from an administrative, a client administrator. But, Your Honor, so that gets to the issue of why do we segregate fact-finding from fact-finding. Fact-finding is fact-finding. And the general rule, which this court follows straight from the Supreme Court, is that it is the district court's job to find facts. Yeah, but this, I agree. I mean, we can go over the arguments again and again. But, I mean, it's not the same thing. You're not taking evidence. It's just a stack of paper, right? I mean, so we get to Techman. And Techman says, even though it's just a stack of paper, we would still defer for these institutional reasons, right? District courts are generally better at this. That's what they do. I mean, I don't know. You said it was persuasive, and I agree. And the Fourth Circuit went on to say, Your Honor, that one very good reason is because you're going to waste the time of the district court. It's going to be completely superfluous. And then you're going to have to redo their job. Now, certainly you can do it. You are judges. You can do it, but you don't do it. But we review things de novo all the time. But you don't review fact-finding de novo. How about like a bankruptcy? So in bankruptcy, you defer to the bankruptcy court. Right, but the district judge's decision was de novo. Right. Is that kind of what's going on here? No, not at all. So here we have- Three levels of review. The district judge is in the middle. But in different ways. We've got bankruptcy court. District court defers to bankruptcy court. You defer to bankruptcy court. So you've got two levels of appellate review. It's completely different. You're an appellate panel. The district court's not an appellate panel. I mean, we review the district court's decision de novo, is my point. And I thought you were saying we never review a district court decision de novo. Yeah.  And fact-finding is not limited to a witness sitting on a witness stand testifying. In Anderson v. City of Bessemer City, the Supreme Court said, deference to the fact-finder includes testimony and written stuff, record-type stuff, which this court also found in the Anderson v. Premier Underwriters case. A cold record. That was a cold record. All right. One thing about Techman. There's a footnote in Techman that suggests that they could take, that the district court could take additional evidence. Yes. Right? You cannot do that in this circuit. No, I think you can. I think under Wilkins you can take. If I have a due process claim or some other kind of claim that's kind of external to the actual benefits determination, I can take external evidence. In the Fourth Circuit, the way I read that footnote is for the benefits determination itself, they can take new evidence. They're not suggesting that it would be normal, but they're suggesting that you can. That's, to me, a very key difference between the legal regime in the Fourth Circuit and the one that we have in the Sixth Circuit. Is that not correct? That's not really, Your Honor. I handle these cases all over the country. The Fourth Circuit and other circuits, their rules are only slightly different. I mean, you need a very, very good reason to bring in any evidence outside the record. I'm not aware of any ERISA case in any circuit where they've actually taken additional evidence. I mean, is the footnote incorrect? No. It's just a matter of you have to have a very good reason to expand the administrative record in any circuit. And the procedural issue is the one where you see expansion. If you didn't get a full and fair review, then you can bring in new evidence. And that's what I've seen across the country with respect to these cases. Why doesn't – let's go back to Wilkins again, because, I mean, we reject the bench trial standard, right? Yes. Which is what Techman embraces. And also, Judge Cole's opinion – I think it was Judge Cole – said, this is back in 1996 or whenever this opinion comes out. That's just the law of the circuit, isn't it? No, Your Honor. I mean, again, with a prior precedent ruling, you'd need to go back to Moore, which is prior to that. Also, Judge – I don't think Moore relied on that. It was – oh, you're right. I'm sorry. You're right. Moore relies – You're right. If you trace – maybe I'm wrong about this, okay? But Moore seems to rely on Simpson if you trace it back. Simpson, I believe, predates Wilkins. Right. All right? Right. But Simpson is not – is an actual case. But again, then you're going to have – Why is that not completely different? You're going to have to make a distinction between fact-finding with a live witness versus fact-finding with the Supreme Court says is fact-finding, on a record or no. And we're not going to waste that time. And again, Concrete, the Supreme Court says – and again, the question is why do you want to make an exception to the general rule for ERISA cases? There is no reason. Concrete says ERISA is all about efficiency. So we're going to entirely waste the time that the district court spends, and we're going to disincentivize resolution, which is exactly what the Concrete Court talked about and what the Techman Court talked about. I mean, I guess I don't disagree with any of that. Can I talk – No, I mean, I'm saying, yeah, maybe that's persuasive. And I think that most of the circuits are on the side of deferential review. That's the way I read it. Your friend on the other side disagrees. But I go back to what we've said, and I'm not sure – Can I talk about Wilkins? I mean, I'm just not sure that Wilkins doesn't resolve the issue. There's two different issues. The issue of whether Rule 52 is a proper vehicle, that was the issue that was addressed in Wilkins. And, Judge Cole, you said in that opinion that what the court said on that issue is dicta. And it was. You said it was unnecessary to the outcome and it cannot affect the party's rights. And here's another key point, Your Honor. You have to look at what the plaintiff asked for in Wilkins. The plaintiff asked for a trial with witnesses live in front of the court. And what the Wilkins case said was, we don't think Rule 52 is appropriate for that because then we're going to go beyond the administrative record. What nobody discussed or analyzed is, what about a trial on the record under Rule 52? Which is what Techman just said is the appropriate standard. And I think that makes all the sense in the world. We want the Supreme Court, as my friend says in Sarnia. It's a trial on the record with no witnesses. Right. And no evidence other than what has already been presented to the plan administrator. Right. So it's kind of an odd bench trial where, I mean, what are you deferring to at that point? I'm deferring. The district judge has this affidavit and this affidavit. And he says, I believe this one or this one is more persuasive for whatever reason. And I can read those two affidavits. Again, I think the Techman court was right on here. This is not what you do. I mean, ways, so deciding how much weight should I give to this piece of evidence that is institutionally assigned to the district court for very good reasons. And that's the reason why. And we don't, and again, why in an ERISA case do we want to make the district court's job completely superfluous and disincentivize these things? I think you could absolutely. Is the senator view dispositive? Do you lose if we apply to no vote? Absolutely not, Your Honor. We probably, if we rule in your favor without deciding this, right? What? We could rule in your favor without deciding this. Yes. So you absolutely should. I mean, to the extent you decide not to do that. I think it would be good to provide this needed guidance. Well, isn't it dicta if it doesn't matter? What? Isn't it dicta if it doesn't matter? It depends on what you do. You could, I mean, if you decide that and then you don't decide what you would decide under clear error review, then it would be holding. If you decide what you would decide. But we agreed with you that the senator view doesn't matter. It's not essential to the holding. The senator view is not essential to the holding. It depends on what you hold, I think. Right? I mean, it depends on what level of analysis you reach. If we agree with you, you told me that you went even under the no vote review. If I agreed with that, that makes the senator view not essential to the outcome. And if you wrote that in your opinion. That's correct. But it would be considered dicta for the first time. Wouldn't there be a standard of order of operation? The Supreme Court said that we can go through an order of operation. Order of operation one, standard of review. Order of operation two, merits. I'm not sure I understand your question. Well, I'm just disputing. Right. We'll talk about it later. Fair enough. Fair enough. I mean, on the merits, Your Honor. I mean, I think Judge Marbley, I mean, he analyzed, as you talked about the, and I do want to talk about the burden of proof because it's very important in these cases because the Supreme Court has said time and time again, the plan is at the center of ERISA. You have to enforce the plan provisions as written. That includes the proof provisions. The proof provisions here specifically say we need a statement by the treating physician setting forth restrictions and limitations. And my friend is right. Doctors don't decide about disability. Doctors decide what can this person do and what can this person not do. And Judge Marbley looked at that evidence during the elimination period and he dissected each and every piece of it. I mean, it's like we're talking about two different records. The Mayo Clinic notes, again, there's nothing in those notes that I can glean that says that this woman is unable to do her occupation. Did any doctor do a functional abilities test or examination? No, the closest, and it's a great question, Your Honor, because that's objective, right? And we get into these disputes about objective versus subjective evidence. And the point is simply when it's subjective, it's more weighty. And so the closest thing we have to that, and again, keeping in mind, it's the claimant's burden to prove the case. And Mr. Mary says, well, the issue is what's the reason she left work? I asked a question that we've, what's the answer to my question? No doctor did that, right? No, no, no. But my point is the closest we come to that is the physical therapy records, which Judge Marbley went through in detail. And the thing about those, Your Honor, is she's over a course of two weeks. She's got two appointments each week. She increases her exercise each time. So she's doing better each time. She's saying she's tired, which we would expect. It's hard, right? But she's got no pain during these things. And they add exercises each time, upper extremity, lower extremity, the aqua. And so at the end of it, the physical therapist says her rehab potential is good. Was that a physical therapist that was during the elimination period or after? During. Your friend on the other side says the evidence gets better for his client outside the elimination period. Is your point he's wrong about that or is your point? Yeah, he's wrong. I mean, your point was right. Question. I'm sorry. Your question was appropriate. It's relevant evidence, isn't it? What? It's relevant evidence. Which? The post-elimination period. Yes. It can be relevant in the case. If I say I examine you on day 366 and I conclude that you were disabled or whatever, I understand you wouldn't make the ultimate conclusion. You would probably just say for the last 90 days you've been unable to whatever, okay? But relevant, right? Potentially, yeah. On a sliding scale, right? I mean, you could have a doctor in 2019 say, hey, I've looked at this entire thing. I've examined this patient and I've looked at all the records and this person has been completely unable to do anything or has the following restrictions and limitations from date X to date Y. That would be relevant, right? That would be good evidence. We don't have anything like that in this case. Nothing. Nothing like that. These doctors, the ones at the end, Russell, who she went to for the sole purpose of trying to get a disability form signed, which is important, again. And this was after a significant gap in treatment. I mean, the lack of treatment in this case here is stark. I mean, in 2018, if you want to look at post-elimination period evidence, I mean, I think she had one or two visits with doctors. And again, to Judge Wheeler's question, Mayo Clinic is made up of experts on this stuff, right? What they recommended was intensive physical and psychological rehabilitation. That assumes she's capable of that. And if she's capable of that, I think she's capable of working. And to the extent that these doctors, all of whom she saw, who said, we don't do disability evaluations, Duda and Wedner, to the extent you decline to opine on a certain area, I mean, if they truly thought that she was unable to do these things, I think they would be required under their Hippocratic oath to say so. And we don't have any of that in this record. And I think Judge Marbley dealt with these issues, I think, exactly correctly, including the Social Security Administration, whose findings were almost the same as Judge Marbley's was. And again, I think he was right. They were sort of looking at this post-elimination period thing. And again, the ALJ opinion didn't even mention the physical therapy records, which I think are the closest thing we have to objective evidence in this file. I see my time is up. Thank you, Counsel. Thank you, Your Honors. Thank you, Roberto. Very briefly, with respect to the Hippocratic oath, there are a lot of doctors that won't make an opinion about whether someone's disabled or not. They will tell you, I'm here to treat the disease or I'm not here to treat the disease. My friend's comment that the Mayo Clinic said that she was a candidate for rehabilitation means that she could work. No, it doesn't. It means that she can be rehabilitated, perhaps. Even in the post-elimination period, she was exercising, and she got a five out of five on one of the functional tests. Yeah, but the same documents talk about her unsteady gait and her inability to move, transition from one position to another. I mean, that isn't evidence that she can work. That was evidence that she's five for five. The best evidence that she could not work on July 16th due to her disability was the statement from her employer that said, we kept adjusting her work because of her disease, because of her illness, but we finally got to the point where we couldn't make the adjustments anymore. That's the best evidence. We didn't talk about her caregiver. I mean, are we to the point where the only evidence that counts in an ERISA case is medical evidence? Because her caregiver submitted a three- or four-page affidavit, talked about her whole history. Could he potentially be biased? Sure he could, but it's still evidence, and there's no indication that he was biased. And as far as, Your Honor, your question about the later doctors and maybe they were procured by lawyers or not, my question would be, so what? Unless we think that the lawyer went out and found some quack to render an opinion. I mean, the case law from this court is that post-elimination period evidence is valid and reliable to the extent it's consistent with the earlier evidence, and there's nothing inconsistent about any of that evidence. Her situation has been the same. Yeah, my point was just you were downplaying the early evidence because she didn't have a lawyer. Oh, I didn't. She didn't have a lawyer at that point, so that evidence isn't as helpful because she didn't procure the right information. I thought that was your argument. No, I was merely trying to respond to what I perceived the point was that why didn't she do stuff earlier. I was responding to your initial point. Okay, you and I were at cross purposes. My time is about over. I thank you for your time. Thank you, counsel. Thank you both for your helpful briefs and arguments, and the case will be submitted.